FEE PAD
N/S

FILED
CLERK, U.S. DISTRICT COURT
11/8/2026
CENTRAL DISTRICT OF CALIFORNIA
BY mba DEPUTY
DOCUMENT SUBMITTED THROUGH THE ELECTRONIC DOCUMENT SUBMISSION SYSTEM

DONTAY PHILLIPS
Dontay@clearscopecounsel.com
791 Salinger Place
San Jacinto, California 92583
Telephone (702) 912-6283
Plaintiff, Pro Se

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

DONTAY PHILLIPS,

Plaintiff,

v.

BANK OF AMERICA, N.A.,

Defendant.

Case No. 5:26-cv-06681-KK (ACCVx)

**COMPLAINT FOR**
**(1) VIOLATION OF THE EXPEDITED FUNDS AVAILABILITY ACT AND REGULATION CC (UNLAWFUL HOLD); AND**
**(2) VIOLATION OF THE EXPEDITED FUNDS AVAILABILITY ACT AND REGULATION CC (NOTICE OF EXCEPTION)**

**DEMAND FOR JURY TRIAL**

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 12 U.S.C. § 4010(d) because this action arises under the Expedited Funds Availability Act, 12 U.S.C. §§ 4001 to 4010 (the “Act”), and Regulation CC, 12

C.F.R. part 229 (promulgated May 27, 1988, 53 Fed. Reg. 19,433, as amended).

2. Venue is proper in this District under 28 U.S.C. § 1391(b)(2). The deposit, the hold and the denial of access to the funds occurred in Hemet, Riverside County, California, which lies within the Eastern Division. 28 U.S.C. § 84(c)(1).

3. This action is brought within one year after each violation alleged below. 12 U.S.C. § 4010(d); 12 C.F.R. § 229.21(d).

4. Plaintiff opted out of the arbitration provision of Defendant's Deposit Agreement and Disclosures in the manner that agreement provides.

## NATURE OF THE ACTION

5. This action arises from Bank of America's decision to hold every dollar of an $8,500 check that Plaintiff deposited at its ATM in Hemet, California on August 27, 2026, and then, after the paying bank had paid the check, to extend that hold on the stated ground that the check may be returned. The check was never returned.

6. Federal law limits when a bank may hold a deposited check beyond the ordinary availability schedule. A bank may extend a hold for reasonable cause only on facts that would cause a reasonable person to hold a well grounded belief that the particular check will not be paid, and never on the basis of a class of checks or a class of persons.

7. Bank of America has given conflicting accounts of when the hold was set to end and two different reasons for it. Its written explanation identifies no fact about the check. It relies instead on general characteristics of the depositor and the size of the item, and on its general inability to verify items drawn on other banks.

## PARTIES

8. Plaintiff Dontay Phillips maintains a residence in San Jacinto, Riverside County, California. He also lives in St. Louis, Missouri and practices

law in Missouri, and Defendant's records list his St. Louis address as the Account's mailing address. At all relevant times he held a personal Advantage Plus Banking checking account with Defendant ending in 0482 (the "Account"), which he opened about ten years ago and which has been associated with his San Jacinto address since it was opened.

9. Defendant Bank of America, N.A. is a national banking association with its main office in Charlotte, North Carolina. It operates financial centers and ATMs throughout California, including the ATM at its financial center at 1687 East Florida Avenue, Hemet, California 92544 (the "Hemet ATM").

10. Defendant is a depository institution subject to the Act, and a bank and depositary bank subject to Regulation CC. 12 C.F.R. § 229.2.

## FACTUAL ALLEGATIONS

### A. The Deposit

11. On Thursday, August 27, 2026, between about 2:00 and 3:00 p.m. Pacific Time, Plaintiff deposited one check for $8,500 into the Account at the Hemet ATM.

12. The check was drawn on the U.S. Bank business account of Plaintiff's law firm and made payable to Plaintiff as an owner's draw.

13. Plaintiff made the deposit before Defendant's cutoff hour for ATM deposits, so August 27, 2026 was the banking day of deposit. Defendant's own letters state that it placed the hold on August 27, 2026.

14. The check was not stale, postdated or previously returned. Plaintiff's online view of the U.S. Bank account showed a debit for the check dated August 27, 2026. U.S. Bank paid the check. It was never returned, and Defendant has never claimed to have received a return, a notice of nonpayment, or any communication from U.S. Bank about it.

15. The Account was not a new account. Over its life it regularly received deposits larger than $8,500, including electronic payments for Plaintiff's

work and student loan disbursements.

**B. The Hold and the Shifting Dates**

16. Defendant held the entire $8,500. It did not make the first $275 available on Friday, August 28, 2026, and it made no part of the deposit available by Monday, August 31, 2026, the second business day after the banking day of deposit.

17. Defendant states that its ATM hold notification at the time of deposit indicated the hold would be released on September 2, 2026, and that such notifications appear before a deposit is completed. Exhibit C at 1. Plaintiff saw the September 2 date in Defendant's mobile application after the deposit.

18. Because September 2 fell after August 31, the hold to September 2 already delayed availability beyond the schedule in 12 C.F.R. §§ 229.10(c) and 229.12. It could be lawful only under one of the exceptions in 12 C.F.R. § 229.13.

19. Defendant's statement that its ATM hold notifications appear before a deposit is completed indicates that it decided on the hold before it presented the check to U.S. Bank. Any basis for that decision therefore had to rest on information Defendant already had, not on the presentment or payment of this check. Defendant has never identified any such information.

20. Defendant sent Plaintiff no email or other electronic notice of the hold until 1:00 a.m. on September 1, 2026. On information and belief, the ATM notification stated a release date but no reason for the hold. Defendant's own descriptions of that notification mention only the September 2 date. Exhibits B, C.

21. On Tuesday, September 1, 2026, Defendant extended the hold to September 8, 2026. Its written notice of that date, titled Hold On Your Deposit, was addressed to Plaintiff's Missouri mailing address and posted in Online Banking. It held all $8,500 and gave a single reason, that Defendant had "information indicating the check(s) may be returned." Exhibit A. Defendant sent

an email alert with the same date and reason at 1:00 a.m. that day.

22. Also on September 1, 2026, Plaintiff contacted Defendant by live chat, and Defendant's specialist told him the funds would be available on September 5, 2026.

23. On September 2, 2026, Defendant's mobile application showed the $8,500 as a pending debit or hold dated September 1, together with a negative balance alert.

24. The funds first became available to Plaintiff on Saturday, September 5, 2026. Defendant has described that access as being for the business day of September 8, 2026. Exhibit C at 1.

**C. The Check Was Paid Before the Hold Was Extended**

25. Regulation CC requires a paying bank that decides not to pay a check of $5,000 or more to give notice of nonpayment so that the depositary bank receives it by 2:00 p.m. on the second business day after the banking day on which the check was presented. 12 C.F.R. § 229.31(c). A paying bank that returns a check must send it so that the depositary bank would normally receive it by the same time. 12 C.F.R. § 229.31(b).

26. On information and belief, Defendant presented the check to U.S. Bank on August 27 or August 28, 2026. Any notice of nonpayment was therefore due to reach Defendant by 2:00 p.m. on August 31 or September 1, 2026.

27. On information and belief, when Defendant extended the hold on September 1, 2026, it had received no notice of nonpayment, no returned item and no other information from U.S. Bank or anyone else indicating that the check would not be paid. Plaintiff bases this belief on the facts that U.S. Bank paid the check, that neither of Defendant's written explanations identifies any such information, and that Defendant's September 28 response describes the hold as set on August 27 for release on September 5.

28. Payment of the check and the absence of any return or notice of

nonpayment do not by themselves prove that the check was collectible when Defendant placed the hold. They are, however, strong circumstantial evidence that by September 1 Defendant had no factual basis for extending the hold on the ground that the check may be returned, and Defendant has identified none.

**D. Defendant's Inconsistent Explanations**

29. On September 3, 2026, Plaintiff submitted a complaint to the Consumer Financial Protection Bureau. Defendant's response of September 28, 2026 stated that all deposits are subject to hold review, that the hold was placed on August 27, 2026 with availability on September 5, 2026 at 9:00 a.m. Pacific, and that no bank error occurred in placing the hold or giving notice of it. Exhibit B. The response did not mention September 2 or September 8 and identified no information about the check.

30. Plaintiff then complained to the Office of the Comptroller of the Currency. Defendant's response of October 13, 2026 acknowledged that the ATM notification gave September 2 and that Defendant extended the hold on September 1 to September 8. Exhibit C.

31. The October 13 response identified no information about the check from U.S. Bank or any other source. It stated instead that Defendant's hold decisions depend on factors such as account tenure, balance history, prior deposits and the amount of the check; that Defendant cannot access account information at other financial institutions to verify an item when it is deposited; and that a paying bank may recall funds for a period after their release. Exhibit C at 1.

32. Each factor named in the October 13 response was known to Defendant on August 27, 2026. None is information about whether this check would be paid.

33. The October 13 response declined to disclose the information Defendant used to decide the hold unless compelled by subpoena or court order.

Exhibit C at 2.

34. Defendant's accounts of the hold are therefore inconsistent. Its ATM notification gave September 2, its September 1 notice gave September 8, and its September 28 response said the hold was set on August 27 for September 5. Its written explanations also give two different reasons, information that the check may be returned and general account and amount factors.

**E. The Record Regulation CC Requires**

35. When a bank invokes the reasonable cause exception, Regulation CC requires it to keep a record of each notice together with a brief statement of the facts giving rise to its doubt about the check's collectibility. 12 C.F.R. § 229.13(g)(5). Plaintiff is Black, and Regulation CC forbids basing such a determination on any class of persons; the official commentary gives the depositor's race as an example. 12 U.S.C. § 4003(c)(2); 12 C.F.R. pt. 229, app. E, § 229.13(e) cmt. 4. The basis for the hold must therefore lie in facts about this check, and Defendant has identified none.

**F. Harm to Plaintiff**

36. Plaintiff lost the use of all $8,500 from August 28 through September 5, 2026.

37. Because Defendant was holding the deposit, it refused payments from the Account for insufficient funds while the Account's balance included the $8,500. Defendant sent Plaintiff insufficient funds alerts for August 31 and for September 1, 2, 3 and 4, 2026. On September 1 it refused a $33.69 electronic payment while reporting the Account's balance after that transaction as $8,509.95. On September 2 it refused to process Plaintiff's scheduled $117.57 Bill Pay payment to the Eastern Municipal Water District for insufficient funds, as it told Plaintiff by email on September 3, 2026.

38. The Eastern Municipal Water District charged Plaintiff a $20 late fee on the unpaid bill.

39. The water bill payment was scheduled for September 2, the date Defendant had given for release of the funds, and Plaintiff relied on that date in letting it go forward. Had Defendant mailed or delivered a compliant notice by August 28, 2026 telling him that the entire deposit would be held past September 2 and why, Plaintiff would have rescheduled that payment or moved other funds into the Account before September 2, and he would not have incurred the refused payment or the late fee. Defendant's first written notice of the extended hold reached him at 1:00 a.m. on September 1, less than one business day before the scheduled payment. Plaintiff's other funds were held at other banks, and a transfer initiated on September 1 would not have reached the Account before the payment was processed on September 2.

40. Plaintiff also lost time from his law practice seeking an explanation and the release of his funds, and the hold and shifting dates caused him stress and embarrassment in meeting his obligations.

**COUNT ONE**

**Violation of the Expedited Funds Availability Act and Regulation CC Unlawful Delay in Availability (12 U.S.C. §§ 4002, 4003, 4010; 12 C.F.R. §§ 229.10(c), 229.12, 229.13, 229.21)**

41. Plaintiff incorporates the preceding paragraphs.

42. Unless an exception applies, a depositary bank must make the first $275 of a day's check deposits available for withdrawal by the next business day, 12 C.F.R. § 229.10(c)(1)(vii), and the rest of a check deposit by the second business day after the banking day of deposit, 12 C.F.R. § 229.12(b). For Plaintiff's deposit those dates were August 28 and August 31, 2026.

43. Defendant made none of the deposit available by either date.

44. The reasonable cause exception did not apply. Reasonable cause requires facts that would cause a well grounded belief in the mind of a reasonable person that the check is uncollectible, and the belief may not rest on the fact that

the check is of a particular class or is deposited by a particular class of persons. 12 U.S.C. § 4003(c)(1), (2); 12 C.F.R. § 229.13(e)(1). The official commentary gives as examples of improper grounds holding a check drawn on a rural paying bank simply because the bank will not learn of nonpayment before the funds must be made available, and the race or national origin of the depositor. 12 C.F.R. pt. 229, app. E, § 229.13(e) cmt. 4.

45. A bank may consider a combination of factors, including the depositor's own history, but only facts that give a reasonable person a well grounded belief that the particular check will not be paid. 12 C.F.R. pt. 229, app. E, § 229.13(e) cmt. 3. Account tenure, balance history, prior deposits and the amount of the check, as Defendant describes them, bear no reasonable connection to whether U.S. Bank would pay this check. The Account had been open about ten years and regularly received larger deposits, and the check was drawn on the account of Plaintiff's own law firm and was paid. Defendant's October 13 response identifies no fact about this check, its drawer or the paying bank. To the extent Defendant applied those factors as a general screen to depositors who share them, rather than to facts about this check, it relied on a class of persons, which 12 U.S.C. § 4003(c)(2) and 12 C.F.R. § 229.13(e)(1) forbid. Defendant's general inability to verify items drawn on other banks applies to every such check and is the kind of ground the commentary rejects.

46. Defendant's practice of reviewing all deposits for possible holds does not change this result. A bank's case-by-case discretion to delay availability does not permit delay beyond the schedule in 12 C.F.R. §§ 229.10(c) and 229.12. 12 C.F.R. § 229.16(c)(1).

47. To the extent Defendant relies on the amount of the check, the large deposit exception permits delay only of the amount by which the day's deposits exceed $6,725. 12 C.F.R. § 229.13(b). Defendant did not invoke that exception and did not make even the first $6,725 available by August 31, 2026.

48. No other exception in 12 C.F.R. § 229.13 applied. The Account was not a new account, and the check had not been returned and redeposited. In the six months before the deposit, neither the Account nor any other deposit account Plaintiff held with Defendant had a negative balance, or would have had one if checks or other charges had been paid, on six or more banking days, or in an amount of $6,725 or more on any day. See 12 C.F.R. § 229.13(d). No emergency condition existed.

49. On information and belief, Defendant's failure was not a clerical, calculation, computer, programming or printing error. It resulted from Defendant's decision to hold the deposit and its judgment about what Regulation CC allowed, and an error of legal judgment is not a bona fide error. 12 C.F.R. § 229.21(c).

50. Plaintiff does not allege that a release on September 8 would have been too late had a valid exception applied. For a valid exception, Regulation CC generally treats an extension of up to five business days as reasonable. 12 C.F.R. § 229.13(h)(4). Plaintiff alleges that no valid exception applied, so the ordinary schedule in 12 C.F.R. §§ 229.10(c) and 229.12 governed.

51. Defendant is liable for Plaintiff's actual damages, additional damages of not less than $125 and not more than $1,350, and the costs of this action. 12 U.S.C. § 4010(a); 12 C.F.R. § 229.21(a).

**COUNT TWO**

**Violation of the Expedited Funds Availability Act and Regulation CC**
**Untimely and Inaccurate Notice of Exception**
**(12 U.S.C. §§ 4003, 4010; 12 C.F.R. §§ 229.13(e)(1), 229.13(g), 229.21)**

52. Plaintiff incorporates the preceding paragraphs.

53. A bank that extends availability under an exception must give the depositor a written notice that states, among other things, the reason the exception was invoked and when the funds will be available. 12 C.F.R. § 229.13(g)(1)(i). For the reasonable cause exception, the notice must state the reason the bank

believes the check is uncollectible. 12 U.S.C. § 4003(c)(1); 12 C.F.R. § 229.13(e)(1).

54. When a deposit is not made in person to a bank employee, the notice must be mailed or delivered as soon as practicable and no later than the first business day after the later of the day of deposit or the day the facts become known to the bank. 12 C.F.R. § 229.13(g)(1)(ii). For ATM deposits, the commentary requires the notice to be mailed by the close of the business day following the banking day of deposit, and treats a bank as knowing facts when they reach the persons responsible for the decision or would have reached them with due diligence. 12 C.F.R. pt. 229, app. E, § 229.13(g) cmts. 1.c, 1.d.

55. Every fact on which Defendant says it relied was known to it on August 27, 2026. Notice of any exception hold resting on those facts was due by August 28, 2026. Defendant's written notice of the extended hold is dated September 1, 2026, two business days late.

56. In the alternative, if Defendant relied on information that first became known to it after August 27, 2026, Defendant has never identified that information or when it arrived, and on information and belief no such information existed, for the reasons alleged in Section C above.

57. The commentary permits a bank that relies on confidential information, such as a reasonable belief that the depositor is kiting checks, to state only that it has confidential information indicating the check might not be paid. 12 C.F.R. pt. 229, app. E, § 229.13(e) cmt. 2.d. Defendant's notice did not invoke confidential information. It said Defendant had information indicating the check may be returned. Defendant's later explanation identifies no such information, confidential or otherwise, and relies instead on account tenure, balance history, prior deposits and the amount of the check. Exhibit C at 1. On information and belief, Defendant had no confidential information of the kind the commentary describes. If Defendant's actual grounds were the general factors it

later described, the notice did not state the reason the exception was invoked. 12 C.F.R. § 229.13(g)(1)(i)(D).

58. These notice violations caused Plaintiff concrete harm distinct from the hold itself, as alleged in Section F above. Timely and accurate notice would have allowed him to reschedule the water bill payment or arrange other funds before September 2, avoiding the refused payment and the $20 late fee.

59. On information and belief, Defendant's notice failures were not bona fide errors. 12 C.F.R. § 229.21(c).

60. Defendant is liable for the actual damages its notice violations caused. Plaintiff seeks a single award of additional damages for this action under 12 U.S.C. § 4010(a)(2)(A) and 12 C.F.R. § 229.21(a)(2)(i).

## PRAYER FOR RELIEF

Plaintiff asks the Court to enter judgment against Defendant and to award

A. Actual damages according to proof;

B. Additional damages under 12 U.S.C. § 4010(a)(2)(A) and 12 C.F.R. § 229.21(a)(2)(i) in the maximum amount the Court allows;

C. Costs of suit under 12 U.S.C. § 4010(a)(3) and Federal Rule of Civil Procedure 54(d);

D. Prejudgment and postjudgment interest as allowed by law; and

E. Any other relief the Court finds just.

## DEMAND FOR JURY TRIAL

Under Federal Rule of Civil Procedure 38(b) and Local Rule 38-1, Plaintiff demands a jury trial on all issues so triable.

Dated November 8, 2026

Respectfully submitted,

DONTAY PHILLIPS
Plaintiff, Pro Se

## INDEX OF EXHIBITS

| | |
|---|---|
| Exhibit A | Hold On Your Deposit notice dated September 1, 2026 |
| Exhibit B | Defendant's response to CFPB complaint, dated September 28, 2026 |
| Exhibit C | Defendant's response to OCC complaint, dated October 13, 2026 |

# EXHIBIT A

BANK OF AMERICA

PO Box 15284
Wilmington, DE 19850

**Hold On Your Deposit**

**Account ending in**
0482—

**Date**
September 01, 2026—

DONTAY PHILLIPS—
[redacted]
SAINT LOUIS MO [redacted]

We want you to know we've placed a hold on your recent deposit here's what— you can expect.—

We know having access to your funds is important and wanted to make you aware that we've placed a hold on all or some of— your funds as we review the deposit you recently made at the ATM.

**Here are the details of the deposit:**

Date of Deposit: ~~A~~ugust 27, 2026— Total Deposit: ~~$~~8,500.00— Amount Held: ~~$~~8,500.00—

**Here are the details of the hold:**

| Amount Held— | Reason for Hold— | Date Available— |
|---|---|---|
| $8,500.00— | We've placed a hold on your deposit because we have information— indicating the check(s) may be returned.[1]— | September 8, 2026 by 9AM local— time— |

[1]Please keep in mind, if we didn't provide this information at the time you made your deposit, and your deposit was paid and not returned to us, we'll refund— any overdraft or returned check fees that were charged because of our hold. Please call us at the number on your statement, and we'll get those refunded for— you.—

To make you aware as soon as possible, we also sent you an email if we have your address on file. In the meantime, please keep an eye on your current available balance to avoid overdrawing your account. You can also set up alerts to stay updated— on your balance and deposits at bankofamerica.com/alerts or from our Mobile app.—

We apologize for any inconvenience this may cause and thank you for your patience.—

C3 15759 0120 E

# EXHIBIT B

BANK OF AMERICA
NC1-007-58-16
100 N. Tryon St.
Charlotte, NC 28255-0001

Complaint Response

DONTAY PHILLIPS
[redacted]
SAN JACINTO, CA [redacted]

**Account ending in**
0482

**Case number**
260903CR1134536

**Date**
September 28, 2026

Correspondence received from: Consumer Financial Protection Bureau (CFPB) on: 9/3/2026

Dontay Philips:

## We want you to know we carefully reviewed your concerns and the information available to us — this could've included information from you and/or within our records.

Here are the issues you brought to our attention on September 3, 2026:

- Details about your check deposit hold
- We appreciate your feedback on your experience

### Details about your check deposit hold

You maintain a Bank of America Advantage Plus Banking account ending in 0482.

When you open an account with Bank of America, you agree to the terms and conditions set forth in the Deposit Agreement and Disclosures publication (the "Agreement"). Please refer to the When Funds are Available for Withdrawal and Deposit Holds section for additional information. The Agreement is available to all clients on our website at bankofamerica.com/deposits/resources/deposit-agreements.go

In your CFPB correspondence, you indicated that you wish to have your funds available immediately to your account.

We understand your concern regarding a hold that was placed on a check in the amount of $8,500.00 that you deposited into your account at one of our Automated Teller Machines (ATMs) on August 27, 2026. Please keep in mind, all deposits are subject to a hold review to help protect you and us from losses if an item is returned unpaid.

It is good to know that after you made your deposit at one of our ATMs, the hold notice appeared on the screen and or your receipt. Additionally, we mailed the hold notice to you and made it available in Online Banking under the Statements and Documents tab.

Note: Mobile Banking requires that you download the Mobile Banking app and is only available for select mobile devices. Message and data rates may apply.

For more details, you can view the Funds Availability Policy section in the Deposit Agreement and Disclosures for our accounts at bankofamerica.com/depositagreement.

C3_00000_000000_00000000

Our research confirms that your check deposit in the amount of $8,500.00 was placed on hold on August 27, 2026, with an availability timeline of September 5, 2026, 9:00 a.m. Pacific.

Bank of America has followed its established standards. It is the policy of Bank of America to adhere to all laws and regulations.

## We appreciate your feedback on your experience

Based on the above information, we have determined that no bank error occurred in the placement or notification of the deposit hold.

We have maintained your account in accordance with the terms and conditions of the Agreement. This document forms a part of the contract between the bank and our clients.

Our records confirm that the funds were released to your account on September 5, 2026, and were made available for use.

Thank you for sharing the details of your experience. We regret any inconvenience you may have encountered as a result of this matter, and any service provided that did not meet your expectations.

Here's information we hope you find helpful, some of which we may have sent you before:

- Copy of Hold On Your Deposit notice dated September 1, 2026

## We're here to help

If you have any questions, please call me directly at 877.430.1431, extension 438109, Monday through Friday, 6:00 a.m. to 2:30 p.m. Eastern. If you have difficulty hearing or speaking on the telephone, we can also connect through Telecommunications Relay Service — dial 711 and give the operator my number and extension.

Thank you.

Alicia Neal
Client Advocate
Regulatory Complaints

cc: Consumer Financial Protection Bureau, case number 260903-37932598



**EXHIBIT B**

# EXHIBIT C

BANK OF AMERICA
NC1-007-58-16
100 N. Tryon St.
Charlotte, NC 28255-0001

Complaint Response

DONTAY PHILLIPS
[redacted]
SAN JACINTO, CA [redacted]

**Account ending in**
0482

**Case number**
260925CR1054599

**Date**
October 13, 2026

Correspondence received from: Office of the Comptroller of the Currency (OCC) on: 09/25/2026

Dontay Phillips:

## We want you to know we carefully reviewed your concerns and the information available to us — this could've included information from you and/or within our records.

Here are the issues you brought to our attention on September 25, 2026:

- Previous response
- Details about your hold
- Address discrepancies
- Feedback on your experience

### Previous response

We researched and responded to similar concerns on September 28, 2026, from the Consumer Financial Protection Bureau (CFPB). We've determined that your circumstances and concerns do not substantially differ from those expressed in your previous inquiry. However, to assist you, we have decided to conduct a thorough and final review to ensure that we have properly and efficiently addressed all your concerns. We have enclosed a copy of our previous response letter for your reference.

### Details about your hold

When a consumer chooses to establish a checking account with us, they are required to sign a bank signature card. By doing so, the consumer agrees to be bound by the terms and conditions set forth in the Deposit Agreement and Disclosures publication (the "Agreement"), which is incorporated into the contract governing the relationship between the bank and the consumer. To learn more, you can view the **About this Agreement** section in the **Deposit Agreement and Disclosures** at **bankofamerica.com/depositagreement.**

A review of our records confirms that the initial August 27, 2026, ATM deposit hold notification indicated the hold would be released on September 2, 2026. Please note that hold disclosures at the ATM are provided before a deposit is completed, giving clients the opportunity to proceed with or cancel the transaction. However, on September 1, 2026, you were provided with a revised hold notice through Online Banking advising that the hold had been extended and that the funds would be available by September 8, 2026.

In accordance with our Deposit Agreement, extended holds may apply and are generally released by the seventh business day. Our records confirm that the funds became available as scheduled and that you successfully accessed them on September 5, 2026, for the business day of September 8, 2026. Please note financial institutions work on Monday's business day for transactions processed on Saturdays.

We can confirm no bank fees were assessed to your account because of the hold. While we offer convenient tools such as Online Banking, account alerts, and our automated telephone service to help you monitor your account, we encourage clients to verify that funds are available before initiating transactions. Ultimately, account holders are responsible for ensuring sufficient available funds are in their account to cover any transactions presented for payment.

Our decision to place a hold and determine its duration depends on several factors, such as account tenure, balance history, prior deposits, and the amount of the check. Although the other financial institution may have released the funds, there is a period in which the funds may be recalled by the paying bank. We cannot access account information at other financial institutions to verify that an item is valid at the time of deposit. Therefore, the hold may remain on the deposited funds within Regulation CC guidelines to protect our clients and the bank. The timeframes for holds comply with Federal Reserve Regulation CC, which allows extended holds to be placed on certain types of deposits.

For more details you can view the **Depositing Funds** and **Funds Availability Policy** section in the **Deposit Agreement and Disclosures** at **bankofamerica.com/depositagreement.**

## Address discrepancies

Regarding your concern about the different addresses, our records confirm that the Missouri address is designated as your mailing address and is reflected on your account statements, which you receive electronically through Online Banking.

The address used in our CFPB response was based on the information provided in the complaint; however, we can confirm that the response was sent to you via secure email.

Please note that, under our Deposit Agreement, clients are responsible for maintaining current contact information and notifying the bank of any changes. Failure to do so may result in communications being sent to an incorrect address. For more details you can view the **Communications, Account Statements, and Check Image Services** section in the **Deposit Agreement and Disclosures** at **bankofamerica.com/depositagreement.**

## Feedback on your experience

Based on our research we have determined no bank error occurred in the handling of your account or deposit hold.

In your OCC complaint you requested internal bank information used to determine if a hold is required. Please note that internal bank records are proprietary and may only be released with a court order or subpoena.

Thank you for taking the time to express your concern. Bank of America takes claims of discrimination very seriously. Bank of America has reviewed the concerns you raised and determined that it has complied with applicable laws and regulations. At Bank of America, we make every effort to exceed expectations on a daily basis, and we regret any dissatisfaction or inconvenience you may have encountered. Please know that your feedback is valuable and we appreciate you sharing it with us.

We regret any inconvenience you may have encountered as a result of this matter and apologize for any service provided that did not meet your expectations.

Here's information we hope you find helpful, some of which we may have sent you before:

- Previous response

## We're here to help

If you have any questions, please call me directly at 877.430.1431, extension 437857, Monday through Friday 8:00 a.m. to 4:30 p.m. Pacific. If you have difficulty hearing or speaking on the telephone, we can also connect through Telecommunications Relay Service — dial 711 and give the operator my number and extension.

## We hope this is helpful.

Tina Burrash
Senior Client Advocate
Regulatory Complaints

cc: Office of the Comptroller of the Currency, case number CS0458830